McCORD v. BLACKWELL.

1. A non-suit is proper only where there is no testimony tending to show a material fact. Whether the testimony is sufficient to establish such fact must be determined by the jury.

2. In action against a married woman on her note, there being some testimony tending to show that she signed the note, that it was given to close an account for goods purchased by her husband in her name, as he had previously done of other goods for which she paid, that she had a separate estate, and that the account was contracted, in part at least, with reference to that separate estate, a non-suit was properly refused.

3. All the evidence showing that the note sued on was executed in South Carolina though payable in Georgia, and the judge having instructed the jury correctly as to the laws of this State, and that if executed here the laws of this State would govern, his remarks concerning the Georgia law, of which there was no proof before him, were immaterial, and therefore not a proper ground for exception.

4. If the contract made by a married woman for the purchase of goods is shown to have been made by her with reference to her separate estate, she is liable, even though the goods so purchased were not expended by her on her separate property or for its benefit.

5. It is error of law in a Circuit Judge to refuse a new trial where the jury by their verdict have plainly violated his instructions; but where the charge is that a married woman cannot be held liable on so much of her note as was given for goods furnished her tenants, it cannot be said that the jury violated this instruction where they were further told that she would be liable for so much of these goods as had reference to her separate estate, and where the verdict was for a less sum than the amount due on the note.

6. A motion for new trial in a law case on the ground of insufficient evidence, is exclusively within the jurisdiction of the Circuit Court.

7. All instructions to the jury should be given to the full panel in open court, and any additional or qualified instruction to the foreman alone, in the absence of the other jurors, would be ground for a new trial; but where the foreman alone was told only that which had been previously and distinctly impressed upon the whole jury, no legal error was committed.

Before Wɪᴛʜᴇʀsᴘᴏᴏɴ, J., Edgefield, November, 1887.

This was an action by Z. McCord and L. F. McCord, as Z. McCord & Son, against J. P. Blackwell, as administrator of Martha Blackwell, deceased. The charge to the jury was as follows:

It is alleged by the defendant that Mrs. Martha Blackwell, at the time of the alleged execution of this note, was a married woman, and according to the uncontradicted proof she was a married woman. Now, the question for you to determine is, first, whether or not she signed that note—the note in suit—because it is denied by the defendant that she signed it. If she signed it, being a married woman, to what extent could she in law bind herself by that contract? What was the consideration of that contract? Evidence was introduced by the plaintiff to show

what was the consideration, that is, what was the indebtedness for which that note was given. Was it for supplies and groceries furnished by the plaintiffs in this case? That is for you to determine from the testimony. In other words, does the note sued on in this case represent groceries and supplies, or other articles of merchandise furnished by the plaintiffs to the defendant?

Now, in determining that question as to whether or not the consideration of the note was furnished by plaintiffs to Mrs. Blackwell, the question arises, did Mrs. Blackwell make any contract with McCord & Son; did she direct it in her own person; did she negotiate with them for those supplies—if you conclude they were furnished by the plaintiffs? If she did not communicate or negotiate for supplies in person, did she through her husband, James P. Blackwell?. If the negotiations for these supplies were carried on by James P. Blackwell, the husband, and it is sought to bind the wife, it is incumbent upon the plaintiffs to show the agency, that is, that the husband acted as the agent of the wife. It is a question of fact for you to say whether or not from the testimony in this case; and you are to take all the testimony, facts, and circumstances in consideration in determining whether or not James P. Blackwell acted as the agent of Mrs. Martha Blackwell in obtaining these supplies from Z. McCord & Son. The principal can constitute another his agent by writing. Whenever that is done, they are bound by the terms of the writing. An agency, too, can be created by parol—word of mouth. I can constitute you, Mr. Foreman, to act as my agent; and where a party constitutes another to act as his agent, if he has authority to act for himself in the matter, he can delegate that authority to an agent to act for him, and whenever a party deals with the agent and seeks thereby to hold the principal liable, it is incumbent on that party to show that the agent had authority, and that he acted in the scope of his agency. These are the general principles of law.

I have been requested by the counsel for the plaintiff to charge you, "That the liability of Mrs. Martha Blackwell (if you conclude she signed this note), depends upon the laws governing such matters in the State of Georgia." It is stated here that the complaint on its face shows that the contract was made in the

State of Georgia—at Augusta—and that the money represented to be paid under that contract was made payable at any bank in Augusta. Unfortunately that contract cannot be produced this morning; you heard the contract read yesterday. It is for you to say whether that contract was dated Augusta, Ga.; whether it was made payable there; whether or not it was signed by Mrs. Martha Blackwell. It is alleged it was a promissory note; being a promissory note, it is competent to go into the matter of consideration, and the proof they introduced here yesterday as to what was the indebtedness that was represented by that note. If a paper is signed at Edgefield—if a party dates it at Edgefield—says it is to be payable at Edgefield, in the absence of anything to the contrary, the presumption is that it was made at Edgefield, and was to be performed at Edgefield.

There is testimony here offered by the plaintiff tending to show that Mr. Shoemate, representing Z. McCord & Son, took the account (which it is claimed by the plaintiff that this note represents) from the book-keeper; that this salesman went off and brought back a note signed by the plaintiff. If you are satisfied from the testimony that Mrs. Martha Blackwell at the time lived in South Carolina, in Edgefield County, and if the note was signed here, I charge you that the law of this State governs in the matter—that is, if the contract was made; if Mr. Shoemate was authorized by the company to come here and close up that account by a note, and it was made in South Carolina, then the laws of South Carolina govern. I charge you as a matter of law, if it was made and signed in Georgia, then the laws of Georgia govern—if she entered in the contract over in Georgia.

What are the laws in South Carolina on the subject? Under the common law, as it existed prior to the adoption of the Constitution of 1868, a married woman could not contract and make debts herself; she could not do it by virtue of her coverture. When she married, her husband possessed himself of her personal property; it became his property by virtue of the right of the married relation; he had an interest in her land so long as the married relation existed. In 1868, under the constitution of South Carolina, the common law was modified or changed in this State, and according to the laws enacted in pursuance of that

constitution, a married woman was permitted to contract and be contracted with in reference to her separate estate. But at the time this contract here was made, that law had been amended. On the 10th of December, 1885, when it is alleged this contract was made, if made in this State it was subject to the amendment of the statute.

In the case of *Habenicht* v. *Rawls,* the Supreme Court says : "By the law as it formerly stood, it was declared that a married woman shall have the right to contract and be contracted with in the same manner as if she were unmarried; but by the law as it stood at the date of the alleged contract here in question, and still stands," (the contract we are now considering) "it was declared that a married woman shall have the right to contract and be contracted with *as to her separate property* in the same manner as if she were unmarried;" under those five words interpolated there by the amendment, she could contract and be contracted with. So the question is narrowed down to the inquiry as to the effect of those five words, under the amendment of the statute law of this State, with reference to a married woman as it existed on the 10th of December, 1885.

Now, subsequent to that, in order to bind a married woman, the contract must be as to her separate property, must have reference to her separate property, must concern her separate property; so the Supreme Court of South Carolina says, and that is the law which governs you in this court. The Supreme Court goes on to say, that the question is not as to what contract a married woman may make; if a given contract is one that the law authorizes a married woman to make, then its effect is, and must necessarily be, the same as that of a contract of a person not laboring under any disability. The Supreme Court goes on to say, it is clear the legislature of South Carolina by this amendment limited the right of a married woman to contract and be contracted with, with reference to her separate property. The Supreme Court says: "It is clear the intention was to limit the power of a married woman as to the kind of contract which she was permitted to make, viz., those in relation to her separate property."

I have been requested to charge that under the law as it exist-

ed in this State, "that before a married woman can be made liable for a breach of a contract, alleged to have been made by her, the jury must be satisfied that the contract was made in relation to and concerned her separate estate." I so charge you. Further, "That a married woman, according to the law of this State, is not authorized by law to make a contract creating an agent, unless the agency is in reference to her separate estate." I so charge you, for the reason that the Supreme Court says she only has the power to contract with reference to her separate estate; therefore she could not confer upon an agent any greater power than the law gives her—that is, with reference to her separate estate.

"That if the jury find from the evidence that any of the articles embraced in the account of the plaintiff were for the use or benefit of Samuel Yeldell, Samuel Robertson, Ben Wells, Jim Tompkins, Charles Yeldell, or Creighton Robertson, or for any one other than Martha Blackwell, the plaintiffs cannot recover in this action for such articles." I so charge you, unless you conclude from the testimony that he furnished those articles, and it must appear from the testimony, that these articles had reference to or for the benefit of her separate estate under the law of this State.

"If the jury find from the evidence that any of the articles embraced in the account of plaintiff were expended in the support of the family of the said James P. Blackwell, that plaintiffs cannot recover in this action for such articles." Whilst the law of this State has modified the common law with reference to the rights of a married woman, it has not released the husband from the necessity imposed by common law to provide a comfortable support and maintenance to his family, according to his means and condition in life—that obligation rests upon the husband yet. And therefore I charge you that it was the duty of J. P. Blackwell, if you conclude that he was the husband of Mrs. Martha Blackwell and they lived together, it was his duty under the law to provide a comfortable support and maintenance to his wife according to his means and condition in life.

I have been requested to charge you, "If the jury find from the evidence that any of the articles embraced in the account of

plaintiff are such as do not concern or affect the separate property of Mrs. Martha Blackwell, she being a married woman, then the plaintiffs cannot recover in this action." I charge you as I have already, with reference to the furnishing of those articles—they must be contracted with reference to, for the benefit of, and concerning her separate estate, according to the law of this State, in order to make it valid and binding upon her. Her contract, according to law, must be with reference to her separate estate, and must concern that. Of course, she can make a contract with reference to her separate estate for the benefit of and concerning it—no doubt about that.

I have been requested to charge you by the plaintiffs: "That, as a matter of law, the note here sued upon as the contract, was made and to be performed in the city of Augusta, State of Georgia, and the contract is to be regulated and enforced according to the laws of the State of Georgia." I can only charge you that if you conclude as a matter of fact that this contract was signed and executed over in Georgia; if you conclude it was executed over in Georgia, and that it was signed there instead of in this State, by Mrs. Martha Blackwell, then unquestionably the rights, obligations, and liabilities all depend upon the statute law of Georgia. As I understand from the statute law of Georgia, as far as I have been advised,[1] a married woman is put upon a footing there, with reference to her separate estate, as if she was unmarried, except she cannot give security for her husband; that her separate estate cannot be made liable for debts of her husband in any way as endorser, or surety, or anything of that kind; but it does not appear that the same restrictions are imposed in the State of Georgia on her power to contract as in this State.

So it will depend upon the conclusion which you come to as to where this contract was signed. If signed in this State and delivered in this State to Z. McCord & Son or their agent, then I charge you that the law of this State prevails. If signed in Georgia and delivered in Georgia, payable at a bank in Georgia, then I charge you that the law of Georgia prevails. From a de-

---

[1] There was no testimony in the case as to the laws of Georgia.
                                                        [Reporter.

cision of that State she can contract as if she was sole—provided there is no restriction by will or deed. She can contract with reference to her separate estate as if she was sole and unmarried, except she cannot contract so as to become surety for her husband to pay his debts or become his endorser in any wise, because the law of Georgia exempts the separate estate of a woman from paying any of these liabilities, and that is the only exception as to her ability to contract. It is for you to apply the facts of this case. I cannot state as a matter of fact that the contract was made in this State of Georgia. There is testimony on that point introduced by the plaintiff, and you are to decide that.

At this point of the delivery of the charge, Mr. Norris, of counsel for plaintiff, asked his honor, Judge Witherspoon, if he was correct in understanding his honor to charge the jury that the contract must be made for the "benefit of."

The Court: Yes, sir ; concerning and for the benefit.

. Mr. Norris : Did you mean to add the words "benefit of" ?

The Court: She can make any such contract that relates to or concerning her separate property. That's the point I have instructed the jury. I intended to charge the law as laid down in this case (*Habenicht* v. *Rawls*).

Mr. Norris : I would like to know specifically whether you intended to include the words "benefit of."

The Court: No. Gentlemen, I charge you as the Supreme Court has laid the law down. It must have reference to her separate property, concern her separate estate. That is what I charge you. I want to restrict my charge on that point to the case of *Habenicht* v. *Rawls*, that the contract of a married woman in this State, which she is authorized to make, is as to her separate property, must have reference to her separate property, must concern her separate property.

Motion for new trial having been made and refused, defendant appealed on the following grounds :

1. Because the presiding judge erred in overruling defendant's motion for a non-suit, the plaintiff having totally failed to estab-

lish the fact that J. P. Blackwell, the party with whom the plaintiffs contracted, was the agent of Mrs. Martha Blackwell.

2. Because the presiding judge erred in refusing the defendant's motion for a non-suit, the plaintiffs having totally failed to show that the alleged contract was made with reference to or concerned the separate estate of Mrs. Martha Blackwell.

3. Because the presiding judge erred in refusing the defendant's motion for a non suit, upon the ground that the plaintiffs failed to establish that Mrs. Martha Blackwell had a separate estate.

4. Because the presiding judge erred in charging the jury, to wit: "I charge you as a matter of law, if it (the contract) was made and signed in Georgia, then the laws of Georgia govern," there being no allegation in the complaint that the contract was executed in the State of Georgia.

5. Because the presiding judge erred in failing to charge the jury as requested by the defendant, "That if the jury find from the evidence that the account of the plaintiffs was created by J. P. Blackwell, that before they can make the said Martha Blackwell liable, it is incumbent on the plaintiffs to show that the said J. P. Blackwell is the duly authorized agent of the said Martha Blackwell, or was such agent at the time the contract was made."

6. Because the presiding judge erred in failing to charge the jury as requested by the defendant, "That if the jury find from the evidence that the articles purchased from the plaintiffs were not expended by the said Martha Blackwell on the separate property of the said Martha Blackwell, or for the benefit of the same, that the plaintiffs cannot recover in this action."

7. Because the presiding judge erred in charging in response to plaintiffs' request, to wit: "That as a matter of law the note here sued upon as the contract was made and to be performed in the city of Augusta, State of Georgia, and the contract is to be regulated and enforced according to the laws of the State of Georgia," there being no allegations in the complaint entitling plaintiffs to an application of the law of Georgia.

8. Because the presiding judge erroneously stated to the jury the law of the State of Georgia governing the right of a married woman to contract.

9. Because his honor, the presiding judge, erred when the foreman of the jury came out to ask for certain letters that were put in evidence, in charging the foreman as follows: "Mr. Foreman, the contract must be with reference to her separate estate, or concerning it; I used the word benefit in my charge; I now withdraw it."

10. Because his honor, the Circuit Judge, erred as matter of law in refusing defendant's motion for a new trial, the jury having ignored his honor's instructions, to wit: "That if the jury find from the evidence that any of the articles embraced in the account of the plaintiffs were for the use or benefit of Sam Yeldell, or William Robertson, or Ben Wells, or Jim Tompkins, or Charles Yeldell, or Creighton Robertson, or for any one other than Martha Blackwell, the plaintiffs cannot recover in this action for such articles." The proof showing that a number of the items of the account were for the use of said parties.

11. Because his honor, the Circuit Judge, erred as matter of law in refusing defendant's motion for a new trial, the jury having ignored his charge, to wit: "That a married woman, according to the law of this State, is not authorized by law to make a contract creating an agent, unless the agency is in reference to her separate estate," the proof showing that many of the articles purchased by J. P. Blackwell from plaintiffs had no reference to her separate estate, nor in any manner concerned the same.

12. Because his honor erred in refusing the defendant's motion for a new trial, the evidence of plaintiffs showing that many of the articles embraced in the plaintiffs' account could not be for the benefit of or concern the separate estate of the said Martha Blackwell.

*Messrs. Sheppard Bros.* and *Gary & Evans,* for appellant.

*Messrs. Norris & Folk* and *R. W. Shand,* contra.

June 24, 1889.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The plaintiffs bring this action upon a note bearing date December 10, 1885, payable to the plaintiffs, one day after its date, at any banking house in Augusta, for the

sum of one thousand and sixty-four 75-100 dollars, which note is alleged to have been executed by defendant's intestate, Martha Blackwell. The only real defence interposed was that she, being a married woman at the time, had no power to make the contract in question. The plaintiffs, as was necessary, assumed the burden of showing that the contract was made in reference to the separate estate of Mrs. Blackwell, and for this purpose they offered testimony, tending to show that the note was given in liquidation of an account contracted with the plaintiffs by her, through her husband as her agent, for supplies furnished for her plantation and her tenants thereon.

At the close of the plaintiffs' testimony, defendant moved for a non-suit upon two grounds: 1st, because there was no testimony that J. P. Blackwell was the agent of his wife; 2nd, that there was no testimony that the contract was made with reference to the separate estate of Mrs. Blackwell. The motion was refused, and the defendant offering no evidence, the case was submitted to the jury under the charge of the Circuit Judge, fully set out in the "Case." After the jury had retired, the foreman returned to the court room for the purpose of obtaining certain letters that had been offered in evidence, when the judge addressed him as follows: "Mr. Foreman, the contract must be with reference to her separate estate, or concerning it. I used the word 'benefit' in my charge, and I now withdraw it."

The jury having rendered a verdict for one thousand and sixty-four 65-100 dollars, defendant moved, upon the minutes, for a new trial upon two grounds: 1st. Because the court erred in giving instructions to the foreman of the jury in the absence of the other jurors. 2nd. Because the consideration of the note embraced articles furnished by plaintiffs that could not relate to the separate estate of the wife." This motion was likewise refused, and the plaintiffs having entered judgment on the verdict, the defendant appeals upon the several grounds set out in the record, which we will proceed to consider.

The first, second, and third grounds impute error to the Circuit Judge in refusing the motion for a non-suit: 1st. Because plaintiffs "totally failed to establish the fact" of the husband's agency. 2nd. Because plaintiffs "totally failed to show" that

the contract was made with reference to the separate estate of the wife.    3rd.  Because the plaintiffs "failed to establish" the fact that Mrs. Blackwell had a separate estate.    It may be said of all three of these grounds, that they are based upon a misconception of what will warrant the granting of a non-suit.    The question in such case is *not* whether the evidence "failed to establish" or "failed to show" a fact necessary to the plaintiff's recovery, but the only question is, whether there is any testimony whatever tending to show the existence of such fact;  and if there is any such testimony, the motion for non-suit must be refused, and the question, whether such testimony is sufficient to establish or show such fact, must always be left to the jury.    For this reason, it is quite clear that neither of these grounds can be sustained.

But we are not disposed to rest our conclusion simply upon the inaccurate phraseology of these grounds of appeal, and will assume that the purpose was to present the proper question, whether there was *any* testimony tending to establish either of the three facts referred to therein.    After a careful examination of the testimony, which is all set out in the "Case," we cannot say that there was an entire absence of testimony as to any one of those facts.    Without going into anything like a minute discussion of the testimony, it will be sufficient to indicate such as tended to show the facts in question.    As to the fact of agency, while it is quite true that there is no direct evidence tending to show that Mrs. Blackwell had, before the account was contracted, authorized her husband to contract in her name, yet the fact of agency may be proved by circumstances, or by subsequent admissions or recognition, as well as by direct evidence of antecedent authorization;  and, as it seems to us, there were circumstances which pointed in that direction, and whether they were sufficient to induce the conclusion that there was an agency was a matter exclusively for the jury.    There was testimony tending to show that for several years previous the course of dealing between the parties had been the same, and that Mrs. Blackwell had recognized the authority of her husband to contract in her name by paying accounts thus contracted, and it was for the jury to say whether this course of dealing authorized the inference that the account for which the note in suit was given was authorized,

especially in view of the fact that the note closing such account was signed by her in person. As to the other two facts—that Mrs. Blackwell had a separate estate, and that the account, in part at least, was contracted in reference to that estate—there certainly was *some* testimony. We do not see any error, therefore, in refusing the motion for a non-suit.

The fourth, seventh, and eighth grounds complain of error in that portion of the charge relating to the laws of Georgia, and their effect upon this contract. Inasmuch as there was no evidence whatever that the contract sued on was entered into in the State of Georgia, except the fact that the note is headed "Augusta, Ga.," and the money secured thereby is made payable "at any banking house in Augusta," and inasmuch as there was direct evidence that the note was executed by the defendant in this State, and in view of the fact that the jury were instructed distinctly, that if the note was executed here, the law of this State would govern, unaffected by any of the provisions of the Georgia law, it seems to us that anything which the Circuit Judge may have said in reference to the law of Georgia was wholly immaterial, and need not, therefore, be considered.

The fifth ground of appeal, which imputes error to the Circuit Judge in refusing to instruct the jury, that before the estate of the intestate can be made liable on an account contracted by her husband, the plaintiffs must show that he was her agent, duly authorized to make such contract, is taken under a misconception of the charge, for we find that the jury were so explicitly instructed, in these words: "If she did not communicate or negotiate for supplies in person, did she through her husband, James P. Blackwell? If the negotiations for these supplies were carried on by James P. Blackwell, the husband, and it is sought to bind the wife, it is incumbent upon the plaintiffs to show the agency—that is, that the husband acted as the agent of the wife."

In the sixth ground, defendant complains that the judge erred in refusing to instruct the jury, that if they find that the articles purchased from plaintiffs were not expended by Mrs. Blackwell on her separate property, or for the benefit of the same, plaintiffs cannot recover. We see no error in refusing this request. The question as to the liability of a married woman on a given con-

tract must be determined by the provisions of the constitution and laws limiting her power to contract, and we are unable to discover anything in either the constitution or any act which would warrant such an instruction. The question in all such cases is as to the nature of the contract, and not as to the disposition of its fruits. If the contract in question is shown to be a contract with reference to the separate estate of a married woman, her liability is at once fixed, without regard to the disposition she may afterwards make of the fruits of such contract.

The tenth and eleventh grounds of appeal claim that the Circuit Judge erred in refusing their motion for a new trial, because, as it is there assumed, the jury disregarded his instructions. There can be no doubt that where a jury renders a verdict in plain disregard of the legal principles laid down to them by the court, it is the duty of the Circuit Judge promptly to grant a new trial. For example, where, as in *Dent* v. *Bryce* (16 S. C., 14), the jury are instructed, as matter of law, that the plaintiff cannot recover, and their verdict must, therefore, be for the defendant, and the jury see fit to disregard such instruction, it is the plain duty of the Circuit Judge, for the very good reasons stated in that case, to grant a new trial, and his refusal to do so is error. Or where, as in the case of *Thompson* v. *Lee* (19 S. C., 489), the jury are instructed, as matter of law, that the plaintiff is entitled to recover, and that the counter-claim set up by defendant cannot be allowed in such action, and the jury, ignoring such instruction, render a verdict for the defendant, a new trial must be granted. In both of those cases, it will be seen that there was, and could be, no question that the jury had rendered verdicts in plain violation of their instructions, and wherever this appears, the rule will always be applied. But, of course, it must first appear that the jury have in fact disregarded the instructions given to them, and until this does appear, the rule cannot be applied.

So that our first inquiry is, whether the appellant is warranted in assuming, as he has done, in both of these grounds, that the jury have in fact disregarded or ignored any of the instructions of the Circuit Judge. The instruction which, in the tenth ground, is assumed to have been disregarded, is that if the jury found

that any of the articles embraced in the account were for the use or benefit of Sam Yeldell, or any of the other persons there named, or for the use of any other person than Martha Blackwell, the plaintiffs cannot recover for such articles; and as the undisputed testimony showed that some of the articles were furnished to the persons named, it is assumed that the jury, by their verdict, disregarded such instruction.

There are, however, two fatal objections to such an assumption : 1st. The instruction did not stop at the point represented in that ground of appeal, but the Circuit Judge, after instructing the jury that the estate of the married woman could not be made liable for articles furnished the persons named, proceeded in these words : "Unless you conclude from the testimony that he furnished those articles; and it must appear from the testimony that these articles had reference to, or for the benefit of, her separate estate under the law of this State." The meaning of this, doubtless, was, as we conclude from the testimony and other portions of the charge, that the estate of the married woman could not be made liable for any of the articles furnished for the use of the persons named, unless it appeared from the testimony that the articles were furnished to these persons as tenants of Mrs. Blackwell, or in some way were furnished in reference to, or for the benefit of, her separate estate.  2nd. The Circuit Judge did not, and could not properly, instruct the jury that the estate of Mrs. Blackwell either could, or could not, be made liable for any articles furnished the persons named, as that depended upon the view they might take of the testimony.  Hence, even assuming that it clearly appears that the jury have by their verdict subjected the estate of the intestate to liability for all or even some of the articles furnished the persons named, it cannot be properly said that the jury have ignored or disregarded any of the instructions given them by the Circuit Judge, unless the court had the power to invade the jury room, or the means of ascertaining the reasons which influenced the jury in making up their verdict; and this the court has always, very properly, declined even attempting to do.

The second objection to the assumption upon which the tenth and eleventh grounds rest is, that, inasmuch as the verdict was

for a sum considerably less than the amount due on the note, we are bound to assume that the jury concluded as matter of fact that some of the articles embraced in the account for which the note was given, were not purchased on account of the separate estate of Mrs. Blackwell; and if so, then the verdict was in accordance with, rather than in disregard of, the instructions given to the jury. How many, or what was the amount, of the articles which, under that view, should have been rejected, was a matter depending upon the testimony, and was, therefore, a matter of which the jury, and not the judge, were the proper arbiters.

The twelfth ground of appeal alleges error on the part of the Circuit Judge in refusing the motion for a new trial, because the evidence of the plaintiffs showed that many of the articles embraced in the account for which the note was given "could not be for the benefit of, or concern, the separate estate of the said Martha Blackwell." This ground depends so entirely upon the view which the Circuit Judge took of the evidence, that it is quite clear this court has no jurisdiction to consider it.

The only remaining inquiry is that presented by the ninth ground of appeal, which alleges error in the remark, above quoted, made by the Circuit Judge to the foreman of the jury when he returned to the court room to procure some papers which had been offered in evidence. Strictly speaking, this was not exactly proper, as it is candidly admitted by his honor in rendering his decision on the motion for a new trial. There is no doubt that the safer and better practice is that all instructions should be given in open court to the full panel, and not to the foreman or any other member of the jury. If, therefore, the remark made to the foreman had contained any new or additional instruction to the jury, or had even modified or qualified any previously given to the full panel, we should have felt compelled to grant a new trial upon this ground. But an examination of the charge, fully set forth in the "Case," shows that the remark made to the foreman not only contained no new or additional instruction, but did not, in the slightest degree, modify or qualify any instruction previously given, and hence we think it furnishes no sufficient ground for a new trial.

It appears from the charge, as set out, that though the judge

did, in a portion of the charge, use some language which might imply that the contract must be *for the benefit of* the separate estate, in order to render a married woman liable, yet when his attention was specially called to this matter by the counsel for plaintiffs during the delivery of the charge, he expressly instructed the jury that it was not necessary that the contract should be *for the benefit of* the separate estate, but that it must concern or have reference to the separate estate. The colloquy which, at that point of the charge, ensued between the Circuit Judge and the counsel for plaintiffs, was well calculated to excite, and no doubt did excite, the special attention of the jury, and they were, therefore, doubtless fully impressed with the idea that it was not necessary for the plaintiffs to show that the contract was for the benefit of the separate estate. Now, when the judge used the language complained of to the foreman, it was manifestly nothing but a mere repetition of the very same instruction, which had been previously given to the full panel, in such a way as was well calculated to impress it upon them. Hence, we think it would be an excess of particularity, a sacrifice of substance to mere form, and an unwarrantable straining of the rule to grant a new trial upon this ground.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.