17657

RESPASS & RESPASS, C. P. A., Respondent, v. KING PONTIAC
and Annie W. R. Freeman, Executrix, Appellants

(114 S. E. (2d) 486)

*Messrs. J. Bratton Davis* and *W. Cannon Matthews,* of Columbia, *for Appellant, King Pontiac, Inc.,* 

*Messrs. George D. Levy* and *Clifton G. Brown,* of Sumter, and *Robinson, McFadden & Dreher,* of Columbia, *for Appellant, Annie W. R. Freeman, Executrix,* 

*Messrs. McKay, McKay, Black & Walker,* of Columbia, *for Respondent,*

May 12, 1960.

STUKES, Chief Justice.

This is an action in contract for compensation for an audit of the books of King Pontiac Company, Inc. Some background of the controversy appears in the opinion filed May 5, 1960, in the case of *Freeman v. King Pontiac Company, Inc.,* S. C., 114 S. E. (2d) 478, reference to which may be had.

It is alleged in the complaint that the resident manager of plaintiff, one Matthiessen, received instructions from Freeman, individually or as secretary of King Pontiac Company, Inc., to examine its books and records and Matthiessen went to its office for that purpose but could not complete his audit because one William Moore, an employee of the company, refused access to the books. Negotiations were had between the defendants for authorization of the

audit, and pursuant to an order issued by the court on August 10, 1955, in the case of *King Pontiac Company, Inc., v. Matthews et al.,* plaintiff was authorized to complete the audit. Subsequently, upon agreement of the parties, the audit was stopped and plaintiff submitted bill for services rendered in the amount of $866.31 to King Pontiac which refused payment on the ground that the audit was made for and on behalf of Freeman individually. Upon submission of the bill to him he refused payment on the ground that he was acting as Secretary and Treasurer for King Pontiac when he ordered the audit, and it is liable for the account. When the audit was ordered Freeman was Vice-President, Secretary, Treasurer and General Manager, of King Pontiac. The titles constitute an overstatement, *Freeman v. King Pontiac Company, Inc., supra.* Plaintiff does not know which of the defendants is liable for payment of the account and the court is asked to determine which, if either, is liable, or if both are liable, and the prayer for judgment is so framed. No question is raised as to the form of the pleading.

The answer of King Pontiac contains a limited denial and alleges that the order of the court in *King Pontiac Company, Inc., v. Matthews et al.,* recognized Matthews as the active general manager of King Pontiac and he and Matthiessen had an understanding on Aug. 23, 1955, that King Pontiac had not authorized the audit and would not pay for it, after which the audit was made by the plaintiff for Freeman. The prayer of the answer was for dismissal of the complaint as to King Pontiac.

The answer of Freeman also contained a limited denial and alleged that on August 4, 1955, he in his capacity as Vice-President, Secretary and General Manager of King Pontiac instructed Matthiessen in writing to examine the books of King Pontiac. Plaintiff had for several prior years made audit of King Pontiac at the request of Freeman in his capacity as an officer of the company and had been paid by the latter. It was denied that the audit ordered

by the answering defendant was stopped by agreement of the parties and, although the defendant requested completion of the audit, it was never completed. If there is any debt to plaintiff, which is denied, it is the obligation of King Pontiac. Dismissal of the complaint as to this defendant was prayed.

Matthiessen, an associate of plaintiff and referred to in the latter's brief on appeal as a partner, testified on trial that he was first employed to audit the records of King Pontiac at the close of 1950 by Mr. Freeman, Vice-President, etc., and stockholder of the company, and made audits during the succeeding years, through April 30, 1955. On August 6, 1955 he began a special audit at the request of Freeman. It was stopped that afternoon by a Mr. Moore who acted pursuant to instructions of Matthews, operating manager of King Pontiac. He returned to the company office, pursuant to Freeman's instructions, on August 10, and worked one or two days in the presence of Freeman who was the corporate officer in charge. Later, on August 23, pursuant to letter and verbal authority from Freeman, the witness returned to King Pontiac and proceeded with the audit. Matthews had no objection to such but made it clear that he was not authorizing the audit and was not responsible for the cost. The witness then telephoned Freeman and asked him if he would personally guarantee the bill or get the money for the job. Freeman replied, "You'll get your money." On the same day the witness was handed a letter at the company office from Matthews, addressed to the witness, and advising him that the writer had no objection to the making of the audit for Freeman, quoting from the letter, "but as I have told you, I want you to understand clearly that I am not authorizing this audit on behalf of King Pontiac Company and any co-operation which I give you in making this audit is not to be construed as an authorization by me on behalf of King Pontiac Company for this audit. * * * If this letter embodies your understanding of the matter at this time, I

would appreciate your signing the letter in the lower left-hand corner in the space provided." The letter was signed by Matthews as General Manager and approved in writing at the foot of it, by plaintiff. Plaintiff's audit, dated Sept. 2, 1955, was later submitted to Freeman; plaintiff had made an earlier annual audit of King Pontiac as of April, 1955 and this September audit supplemented it. Plaintiff's bill inclued $830.00 for twenty and three-fourths days at $40.00 per day, and $36.31 telephone expenses. It has not been paid. Frequently in the past plaintiff made special audits or procured additional information from the records of the company at the request of Freeman, for all of which the company paid. Before August 23rd the witness worked six and three-fourths days, of which two or three days were spent at the company office and during the remainder of the time he was in his office, awaiting further instructions from Freeman.

Freeman died before the trial and his executrix was substituted as a defendant, as indicated by the above caption. Her counsel moved to strike the above witness' testimony concerning his telephone conversation with Freeman insofar as it may have supported an inference that Freeman was assuming personal liability, upon the ground that the witness is interested, as it developed that he shared in plaintiff's profits, and the testimony is inadmissible under Section 26-402 of the Code of 1952, known as the "dead man's statute." The court took the objection and motion under consideration and later refused to exclude the testimony.

Upon conclusion of the above evidence for the plaintiff, which was its case, counsel for Mrs. Freeman as executrix renewed the motion to strike the testimony of Matthiessen as to his telephone conversation with Freeman. He also moved for nonsuit upon the ground that the evidence showed that plaintiff was employed by Freeman in the latter's capacity as an officer of King Pontiac Company, Inc., as was done in the past and the bills for the auditing serv-

ices paid by the company. Both of the motions were refused by the court.

For the defendant, King Pontiac, Matthews testified that he was employed as General Manager of the Company upon the organization of it and has since continued in that capacity. He was in New York when the controversy as to the audit arose and returned to Columbia. On August 23, 1955, when Matthiessen returned to King Pontiac the witness told him that the Company would not pay for the audit. The Company did not receive a copy of it and before that there had been only one special audit, that in 1952.

(At about this point in the record is the statement that counsel for King Pontiac concede that Freeman had authority to order the audit to be made at company expense at the time it was commenced, but they contend this authority was subsequently limited.)

The plaintiff's witness, Matthiessen, was recalled by the court and testified that plaintiff's bill included five and three-fourths days at $40.00 per day for services prior to his signing, in behalf of plaintiff, the letter from Matthews dated August 23, 1955, *supra*.

In evidence as an exhibit was the order of August 11, 1955, in the case of *King Pontiac Company, Inc., v. Matthews et al.*, which action and order are referred to in the case of *Freeman v. King Pontiac Company, Inc., supra*. The order provided, in part, as follows:

"It is further ordered that, pending the return to the Rule the defendants are restrained from interfering with E. L. Freeman in his access to the books and records of King Pontiac Company, Inc.; provided, however, said access is to be reasonable and shall be limited to the place of business of King Pontiac Co., Inc., and during business hours, and shall not in any way interfere with the normal operations of the King Pontiac Co., Inc.

"Be it further ordered: That W. R. Matthews be and he is hereby recognized to be the active general manager of King Pontiac Co., Inc., pending the outcome of the Rule to Show Cause which is returnable on August 20, 1955, in Sumter, South Carolina."

The foregoing is a summary of the evidence that we deem of present importance which was adduced by the parties and admitted by the court. At the conclusion of it counsel for the executrix renewed the motion to strike from the evidence the telephone conversation under the "dead man's statute", and moved for directed verdict in favor of Freeman's estate upon the ground that the evidence showed that the audit was made for King Pontiac, having been authorized by Freeman as an officer of it and only King Pontiac is liable to plaintiff. The court refused the motion to strike the evidence and the motion for directed verdict, but ruled that he would submit the case to the jury upon *quantum meruit,* that King Pontiac is responsible to plaintiff for the services rendered prior to August 11th, and that the jury would pass upon the liability of the Freeman estate to plaintiff for the latter's services after the morning of August 11th.

The jury returned verdict for plaintiff against the Estate of Freeman for $288.77, and against King Pontiac Company, Inc., for $577.54. It is seen that the verdict was for one-third of plaintiff"s claim against the Estate of Freeman, and two-thirds of the claim against King Pontiac. This was in plain violation of the instructions of the court which were to the effect that King Pontiac could be held liable only for the amount which plaintiff earned up to August 12; and that the Estate of Freeman could be held liable for the value of plaintiff"s services which were rendered from August 12, which was the greater portion of the liability.

King Pontiac moved for new trial or, in the alternative, for judgments *n. o. v.,* upon the ground that the verdict was not responsive to the instructions by the court to the jury.

The Estate of Freeman moved for judgment *n. o. v.* upon the ground that the audit was made for King Pontiac upon the authority of Freeman as its officer, whereby the liability was upon it and not upon Freeman, individually. The motions were refused by formal order. Both defendants have appealed.

Appeal of the Estate of Freeman.

The only point presented by respondent to sustain its verdict against the Estate of Freeman, and argued in its brief, is that Matthiessen's testimony relating his telephone conversation with Freeman, from which it may be inferred that the latter assumed personal liability, was properly admitted in evidence. Our consideration will be likewise limited.

The point cannot be sustained. The testimony was inadmissible by reason of the provisions of Section 26-402 of the Code of 1952, which follows in part: "* * * No person who has a legal or equitable interest which may be affected by the event of the action or proceeding * * * shall be examined in regard to any transaction or communication between such witness and a person at the time of such examination decreased, * * * as a witness against a party then prosecuting or defending the action as the executor * * * of such deceased person * * *."

That the admission in evidence of the *content* of the conversation, not merely the fact of it, violated the statute is patent, as is the conclusion that it was prejudicial. True, the statute is to be strictly construed, rather than extended by construction. *Harris v. Berry,* 231 S. C. 201, 98 S. E. (2d) 251, and is in bad repute with modern writers, *Lisenby v. Newsome,* 234 S. C. 237, 107 S. E. (2d) 449, and authorities cited. However, here the applicability of the statute is inescapable. The testimony should have been stricken when the interest of the witness appeared.

Without this inadmissible testimony, we find no evidence in the record which warranted the finding of personal lia-

bility of Freeman or, after his death, of his estate. Admittedly, he was within his authority as an officer of the corporation when he ordered the audit. Hence the motion of the executrix for direction of verdict in her favor should have been granted.

### Appeal of King Pontiac.

The verdict of the jury violated the instructions of the court and the motion of King Pontiac for new trial on that account should have been granted. *Dent v. Bryce,* 16 S. C. 1, *Thompson v. Lee,* 19 S. C. 489. *Cf. McCord v. Blackwell,* 31 S. C. 125, 9 S. E. 777, and *Brown v. Wilson,* 45 S. C. 519, 23 S. E. 630. 39 Am. Jur. 136, 137, New Trial, secs. 127, 129. Annotation, 23 A. L. R. 305.

The only reasonable inference from the evidence adduced at the trial is that the audit was ordered by Freeman as an officer of the corporation, pursuant to his authority and accustomed exercise of it. So much was conceded by its counsel at the trial as to plaintiff's services which were rendered prior to Aug. 12, 1955. The effect of the letter of Aug. 23, 1955, signed by Matthews for King Pontiac and approved by plaintiff, and the effect of the order of Aug. 11, 1955, in the action of *King Pontiac Company, Inc., v. Matthews et al.,* if any effect either or both had upon plaintiff's claim, are not now decided, and they are left for determination upon new trial if either or both are received in evidence.

In an appendix to the record the appellant King Pontiac presents an exception relating to the refusal of the court to admit in evidence a cablegram from its president, who was abroad, to Freeman, dated Aug. 11, 1955. It is not clear from the record whether the exclusion was for supposed irrelevancy or for lack of proof of authenticity. In view of new trial it is not necessary that we pass upon the exception in this appeal.

The judgment is reversed and the case remanded to the trial court for entry of judgment in favor of the Estate of Freeman, and for new trial as to the defendant King Pontiac Company, Inc.

Reversed and remanded.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.